UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 17-106 (MJD/LIB)

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | **GOVERNMENT'S SUPPLEMENTAL POSITION REGARDING SENTENCING** |
| JUSTIN JAMES MONCHAMP, | |
| Defendant. | |

The United States by its attorneys, Gregory G. Brooker, United States Attorney for the District of Minnesota, and David P. Steinkamp, Assistant United States Attorney, hereby submits its Position Regarding Sentencing in the above-entitled matter.

**1.     CAREER OFFENDER STATUS.**

   **A.     The Defendant is a Career Offender.**

It is the position of the government that the Defendant is a Career Offender pursuant to Guideline Section 4B1.1(a). The Defendant has two prior convictions for serious drug offenses: one a Minnesota state court violation, Conspiracy to Commit Controlled Substance Crime in the First Degree-Sale, from 2000; and the second a federal drug trafficking conviction in 2010 from the District of Nebraska.

The career-offender provision provides in pertinent part that the Defendant is subject to an enhanced Guidelines range if "the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." USSG § 4B1.1(a). Section 4B1.2(b) defines a "controlled substance offense" as: an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that

prohibits the manufacture, import, export, distribution, or dispending of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

"Application Note 1 to § 4B1.2 explains that 'controlled substance offenses also include 'aiding and abetting, conspiring, and attempting to commit such offenses.''" *United States v. Maldonado*, 864 F.3d 893, 897 (8th Cir. 2017). Importantly, the binding commentary to § 4B1.2 notes that "in determining whether an offense is a crime of violence or controlled substance for the purposes of § 4B1.1 (Career Offender), *the offense of conviction* (*i.e.*, the conduct of which the defendant was convicted) *is the focus of inquiry*." USSG § 4B1.2, cmt. n.2 (emphasis added).

### B. Minnesota's Drug Sale Statute is Not Overbroad.

The Court should hold that Minnesota's drug statute is not overbroad. The Eighth Circuit recently ruled that a drug conviction under a Missouri statute that, like Minnesota's statute, defined "sell" as including an "offer to sell" qualified as a "controlled substance crime." In *United States v. Thomas*, 886 F.3d 1274 (8th Cir. 2018), the Court surveyed the case law and concluded that, "to meet the Guidelines definition [of "controlled substance offense"], a state law must require something more than a mere offer to sell." *Id.* at 1276. The "something more" can be "an attempt, bona fide offer showing intent, or overt acts furthering that intent." *Id.* Based on a Missouri Court of Appeals opinion from 2002, the Court concluded that the Missouri statute required the government to prove "more than just uttering words in order to constitute an offer." *Id.* at 1277. Consequently, the Missouri

statute was not overbroad and the defendant's conviction counted as a "controlled substance offense." *Id.*

Under the Eighth Circuit's analysis in *Thomas*, Minnesota's first-degree drug sale statute is not overbroad. Subdivision 1 of Minnesota's first-degree controlled substance crime prohibiting "sale crimes" provides in pertinent part that "[a] person is guilty of controlled substance crime in the first degree if . . . (3) on one or more occasions within a 90-day period the person unlawfully sells one or more mixtures of a total weight of ten grams or more containing heroin." Minn. Stat. § 152.021 (2014).

Under Minnesota law "sell" means:

(1) to sell, give away, barter, deliver, exchange, distribute or dispose of to another, or to manufacture; or

(2) to offer or agree to perform an act listed in clause (1); or

(3) to possess with intent to perform an act listed in clause (1).

Minn. Stat. § 152.01, subd. 15a (2014).

In Minnesota, a defendant may be convicted of controlled substance sale by offering to sell only when he makes a bona fide offer to sell drugs—one that is not made "in jest or as a prank." *State v. Bautista*, 1998 WL 422221, at *3 (Minn. Ct. App. July 28, 1998) (unpublished op.). *See also State v. Rosillo*, 2001 WL 881279, at *2 (Minn. Ct. App. July 31, 2001) (unpublished op.) (citing March 1989 subcommittee hearing discussions regarding First Amendment concerns during statute's enactment and stating "an 'offer' to sell [must] include some conduct 'consistent with fulfilling that offer'"), *aff'd without opinion*, 651 N.W.2d 499 (Minn. 2002). For a conviction predicated on an offer to sell,

3

the state must prove some conduct "corroborat[ing] the genuine nature of [the defendant's] offer." *State v. Lorsung*, 658 N.W.2d 215, 219 (Minn. Ct. App. 2003). *See also State v. Hebrink*, 2003 WL 21384828, at *2 (Minn. Ct. App. June 17, 2003) (finding that "offering to sell is an act that is equivalent to completing the sale") (citing *Lorsung*, 658 N.W.2d at 217).

In *Lorsung*, the Minnesota Court of Appeals vacated a theft-by-swindle conviction that arose out of a defendant's offer to sell methamphetamine to an informant because the conviction was irreconcilable with the defendant's conviction for sale of a controlled substance predicated on that same offer. 658 N.W.2d at 219. Comparing the defendant's convictions for sale of a controlled substance and theft by swindle, the court reasoned, "[i]f intent to complete the sale (whether expressed or inferred) is an element of controlled-substance crime, and intent not to complete the sale is an element of theft by swindle; the convictions are legally inconsistent." *Id.* Because the defendant "corroborated the genuine nature of her offer by meeting with the CI and accepting the money," that was enough to support her conviction of second-degree controlled-substance crime. *Id.* at 219. Accordingly, in order to be convicted for sale of a controlled substance predicated on an offer to sell, Minnesota law requires that the offer not be fraudulent and that it be supported by some conduct suggesting the genuine nature of the offer. *See id.*

The *Lorsung* court also clarified the level of proof and intent required to support a sale conviction based on an "offer to sell" finding no inconsistency between two prior unpublished decisions:

> We do not find an inconsistency. In *Bautista*, the defendant's actions satisfied the essential elements of "offering to sell" a controlled substance, and we inferred his intent from those actions. *Bautista*, 1998 WL 422221 at *3. In *Rosillo*, the defendant's actions satisfied the essential elements of "offering to sell" a controlled substance, and we determined that those actions were enough to corroborate the offer and protect against punishing "pure speech." *Rosillo*, 2001 WL 881279 at *2.

*Lorsung*, 658 N.W.2d at 218. Under Minnesota law therefore—regardless of whether the intent to perform on the offer to sell drugs is "expressed or inferred"—a genuine offer to sell is required, and neither a "mere offer" nor a fraudulent offer will support a sale conviction predicated on an offer to sell drugs. *Id.* at 219.

Under Minnesota law, an offer-to-sell conviction must be based on more than a "mere offer" because, in order to protect against infringing on the First Amendment right to free speech, Minnesota courts have interpreted the statute as requiring conduct that imports the genuine nature of the offer. *Lorsung*, 658 N.W.2d at 219. Given the requirement under Minnesota law that an offer be genuine, the difference between a sale conviction based on an offer-to-sell theory and one based on a distribution, manufacture, or possession-with-intent-to-distribute theory is simply the timing of the defendant's arrest. In order to be convicted for sale of a controlled substance predicated on an offer to sell, Minnesota law requires that the offer not be fraudulent and that it be supported by some conduct showing the genuine nature of the offer. *See id.* *Lorsung* directly forecloses the possibility that a person could be convicted based on a "mere offer" or a "fraudulent offer," thus ensuring that sale convictions based on offers categorically fall within the ambit of a "controlled substance offense" under the career offender provision.

5

Other Circuits likewise have concluded that state drug laws that include offers to sell within the definition of "sell" are not overbroad for career offender purposes.  In *United States v. Bryant*, 571 F.3d 147 (1st Cir. 2009), the First Circuit construed a similar New York statute that prohibited the attempted sale of a controlled substance.  Like the Minnesota statute, the New York statute defined "sale" to include offers to distribute.  *Id.* at 158 (quoting N.Y. Penal Law § 220.00(1) ("'Sell' means to sell, exchange, give or dispose of to another, or to offer or agree to do the same.")  Citing New York case law, the Court  held that "it is well-established under New York law that in order to support a conviction under an offering for sale theory, there must be evidence of a bona fide offer to sell—*i.e.*, that the defendant had both the intent and ability to proceed with the sale." *Id.* (internal quotation and citation omitted).  Because a conviction under the New York statute would have required proof of an "*intent* to proceed with a sale," the First Circuit found that "the New York conviction qualifies as a predicate offense under USSG § 4B1.2." *Id.* at 158.

Similarly, in *United States v. Evans*, 699 F.3d 858 (6th Cir. 2012), the Sixth Circuit addressed a claim that Ohio's inclusion of an offer to sell drugs fell outside the same Guidelines definition. *Id.* at 866. Like Minnesota law, the Ohio statute requires that an offer to sell be accompanied by an intent to sell drugs. *Id.* at 867. The Court therefore concluded that the statute contained the necessary *mens rea* and substantial step to constitute an attempted distribution that satisfies Section 4B1.2's definition. *Id.* at 867-68. *But see United States v. Tanksley*, 848 F.3d 347, 352 (5th Cir. 2017) (finding Texas

6

controlled substance delivery statute that includes an offer to sell does not qualify as a controlled substance offense under the Guidelines but without analyzing whether bona fide intent required).

Based on these decisions, the Court should find that the defendant qualifies as a career offender.

**2.   SENTENCING GUIDELINES IF DEFENDANT IS NOT A CAREER OFFENDER.**

If the Court finds that the Defendant is not a Career Offender, the government agrees with the conclusion of the Pre-Sentence Report (PSR) that based on the weight of methamphetamine involved in the offense, the base offense level for Count 1 of the Indictment is 26. The government agrees that a 3-level reduction for acceptance of responsibility is warranted, as long as defendant continues to accept responsibility for his crimes, making the total offense level for Count 1 level 23. The government also concurs in the conclusion of the PSR that the defendant falls within criminal history category VI. With a total offense level of 23 and a criminal history category of VI, the government recommends that the Court find the guideline range to be 92-115 months' imprisonment.

**3.   THE APPROPRIATE SENTENCE UNDER § 3553(a) FACTORS.**

The government urges the Court to find under the factors set forth in 18 U.S.C. § 3553(a) that the correct sentence to impose (before any other reductions are considered) is 180 months, regardless of whether the Defendant is deemed a Career Offender. The Defendant's criminal history and the nature of his offenses, described more fully below,

show that the Defendant is a man who has made his criminal activity a career, whether or not he meets the legal definition set forth in the Guidelines.

Under 18 U.S.C. § 3553(a), when determining the ultimate sentence, the Court looks to the nature and circumstances of the offense; the history and characteristics of the defendant; the seriousness of the offense; the need to promote respect for the law; the need to provide adequate deterrence and protection of the public; providing the defendant with needed educational training, vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences available; and the applicable guideline sentencing range. 18 U.S.C. § 3553(a).

### A.     The Nature, Circumstances and Seriousness of the Offense.

The nature of the current offense of conviction is extremely serious. Although the Defendant only was apprehended with a pound of methamphetamine, he was a well-known target of law enforcement for some time, and was a prolific dealer in the Duluth/Superior area. As the PSR notes:

> As early as June 2016, Cooperating Defendants (CDs) provided law enforcement information pertaining to Justin Monchamp distributing methamphetamine in the Twins Ports, Minnesota, Area since April 2016. Utilizing a different vehicle each time, Monchamp was known to transport several pounds of methamphetamine per week from the Twin Cities, Minnesota, to the Twins Ports Area, where he reportedly utilized various homes to store the methamphetamine, firearms, and cash. Additionally, the CDs provided information pertaining to Monchamp's associates.

PSR, ¶ 6.

Methamphetamine is a scourge in the United States, and particularly Minnesota. The addiction it creates is widespread, hitting the northern, rural part of the state hard with

its damaging effects. The Defendant has really only been employed as a drug dealer during his entire life. His consistent and repeated dumping of poison on others for profit requires a lengthy sentence.

      **B.     The History and Characteristics of the Defendant.**

Although the Court may find that the Defendant does not meet the Guidelines definition of a Career Offender, his actions over the past 29 years show that he has made a career of committing crimes.

The Defendant is 47 years old. During his life he has rarely had a single period in which he was not charged with a crime, doing prison or jail time, or under some sort of court-ordered supervision. He committed his first crime as an adult when he was 18, in 1989. The crime was possession with intent to sell marijuana in St. Louis County. He received a sentence of 90 days, and a stayed 1 year, 1 day sentence. He was placed on probation and violated it almost immediately. This first conviction and punishment did not slow him down, he just moved away, likely to avoid the eyes of law enforcement. Three years later, at age 22, the Defendant was convicted of carrying a concealed weapon and theft in California. He was placed on 24 months probation. Yet, even with these convictions and punishments, he continued to commit crimes. He committed a traffic offense and disorderly conduct at age 27, and violated the terms of probation on each. He served 37 days in jail.

After these offenses were committed, the Defendant began to escalate his criminal activity, moved on to more serious matters. At age 28, he committed a felony drug sale

crime and felony gun crime.  In 2000, he was convicted after a jury trial of Conspiracy to Sell Methamphetamine in St. Louis County.  According to the PSR, the Defendant was running a relatively large-scale methamphetamine manufacturing operation. He purchased raw materials in bulk and made methamphetamine. This was in the days before Mexican crystal methamphetamine flooded the market here. During those early days, the Defendant likely hooked many people on methamphetamine that never recovered.  He received a sentence of 86 months.  While on supervised release, he apparently became a fugitive.  He served about 6 years of his sentence due to supervised release violations.

Also in 1999, the Defendant, in a separate case, was caught carrying a firearm as a felon.  Although the two cases were not prosecuted as one, they are most likely related. The Defendant was carrying a gun while either under a charge of manufacturing methamphetamine, or while committing the offense. He received a 60-month sentence, concurrent with the 86-month sentence he got on the drug manufacturing charge.  He was committing serious and dangerous crimes with impunity. But he was not deterred. While still on supervised release for the drug and gun crimes, in 2006, the Defendant fled from police in a motor vehicle at the age of 35.  He had barely gotten out of prison. For that new felony, he received a sentence of 17 months.  Still, he was not deterred.

At age 38, the Defendant unsuccessfully tried his hand at financial crime, and committed identity theft in New Mexico.  He served 30 months.

Still undeterred, at age 39, he moved up to become a federal level methamphetamine dealer, and was convicted of possession with intent to distribute methamphetamine.  He

was sentence to 100 months imprisonment and 5 years supervised release. After being released, his supervision was transferred to Minnesota in May 2016. By September, he had violated supervised release. He violated again in November. And in December. But more importantly, he was back at the business he knew best, drug trafficking, and had already come on to the radar of drug investigators in June 2016, which led to the conviction he faces now.

Even after all of these consequences, the Defendant has not changed his behavior. The Court needs to send a strong message that the Defendant must accept the consequences of a life of crime and change his behavior. The Court should start its sentencing analysis with a finding that 180 months imprisonment is sufficient, but not greater than necessary to meet the goals of sentencing.

### C.   The Need to Promote Respect for the Law, Protect the Public, and Provide Deterrence.

The Court needs to impose a lengthy sentence a repeat offender who has committed crime literally all of his adult life. Such a sentence will send a strong message to the public that those that continue to engage in serious drug crimes that damage communities will be stopped. It will also protect the public from the Defendant's drug trafficking activities, at least as long as he is incarcerated. A sentence of 180 months also provides general deterrence to those who may consider getting into drug trafficking. Finally, a lengthy sentence may specifically deter the Defendant from committing further crimes, but frankly, given his track record, that possibility is remote.

**D.     The Need to Provide the Defendant With Educational and Vocational Training.**

The Defendant needs to learn a skill that can allow him the ability to make money without engaging in drug trafficking and hurting hundreds of people in the process. A lengthy sentence will give him that opportunity.

Dated: May 23, 2018

                                             Respectfully Submitted,

                                             GREGORY G. BROOKER
                                             United States Attorney

                                             *s/ David P. Steinkamp*

                                             BY:  DAVID P. STEINKAMP
                                             Assistant U.S. Attorney
                                             Attorney ID No. 178470